The Illinois Appellate Court Third Division is now in session. The Honorable Justice Jesse G. Reyes is presiding. Morning ladies and gentlemen. Please have a seat. Sorry, the first matter took us a little bit longer. Um, with counsels, um, on the police cause case. Axis Insurance v. State Automobile Mutual. All right, with counsels' approach, podium please. And please identify yourselves, uh, for the record and what party you represent. Court Your Honor, Brian Bastet on behalf of Axis Insurance. Morning Your Honors, Robert Chalmers on behalf of State Auto. Okay, and rebuttal time, you want some rebuttal time? Uh, three minutes Your Honor, yes. Three minutes? Yes. Okay, and just as a reminder, the microphone doesn't amplify. It only, um, is for recording purposes. So please keep your voices up loudly, clearly, so everybody can hear you. Okay? Thank you. Thank you, Your Honors. Good morning and may it please the Court. My name is Brian Bastet. I represent the Appellant Axis Insurance Company. The matter before the Court today at bottom concerns the Court's responsibilities to resolve ambiguities in a contract. That is the central issue in dispute between Axis and the FLE State Auto. Axis and State Auto dispute the obligations of State Auto to provide insurance coverage to Axis' name insurer, the Chicago White Sox, concerning an underlying personal injury lawsuit that was filed against the White Sox. Well, I have a question. Does the identification and the insurance agreements for 2010 and 2011 exist at all? In 2010 and 2011, they could not be located, Your Honor. So at this point in time, there is no evidence that those were provided to WeClaim. And that's ultimately... And that's both parties, right? Neither party was able to find these agreements, correct? That's correct, Your Honor. Okay. Yes. And that's ultimately the core of the dispute, is whether those specific written contracts were a requirement or a prerequisite to State Auto providing insurance coverage to the White Sox. We contend that they are not and that the Court should resolve an ambiguity in the contract by looking to extrinsic evidence. The trial court disagreed and found in favor of State Auto. Well, I have another question with regards to the agreements. Since we know that they don't exist, right, then why do we have to look at anything outside of the agreements? We're dealing with sophisticated parties here. If they didn't have an agreement in 2010 and 2011, they obviously meant not to include them in their agreements during those two years. Well, I think that's looking to the extrinsic evidence. At the end of the day, there was a contract entered into between the parties in 2011 that was signed by both parties. That contract specifically obligated WeClean to comply with the insurance requirements imposed by the Chicago White Sox. And WeClean followed through with that obligation. They obtained a certificate of insurance that identified the White Sox parties as additional insurance under the contract. So we believe that the Court needs to give effect to the language of the contract that the parties entered into in 2011. And that means giving some effect to the terms of that contract and the obligation for WeClean to comply with insurance requirements. So is the certificate of insurance the hook here then? Is that what you're saying, that because there was a certificate of insurance, therefore the underlying agreements that are at issue here existed in 2010 and 2011? The certificates of insurance serve to illustrate and evidence the fact that WeClean understood the insurance requirements imposed on it by the contract. Isn't the certificate of insurance just to say, yes, WeClean has insurance? In fact, we have coverage. Well, the language of the certificate itself states that the White Sox are additional insurance on the policies of insurance procured. But then it also says this does not, separate from anything else, this does not provide coverage. This certificate does not. The language of the policy still controls. So that's correct, Your Honor. The state audit policy still controls. The certificate has a disclaimer that says that the certificate alone cannot impact the scope of coverage under the policy. So you look at the policy. The state audit policy affords coverage to additional insurers, in this case it would be the White Sox, to the extent that there is a contract between WeClean and state auto that obligated WeClean to get coverage for the White Sox entities. So that requires an analysis of the contract between the two parties. That goes back to the 2011 services contract. And it requires the court to interpret that services contract. But only if it requires to interpret it if there was, in fact, a contract. If the agreement's missing, there's nothing to interpret. I think the disconnect here is that there's two separate agreements. In 2008 and 2009, the parties had two separate agreements. And frankly, I think it was a belt and suspenders approach that the White Sox adopted by having WeClean sign off on the insurance and indemnification agreement. But at that point in time, it had spelled out the insurance requirements to WeClean. WeClean was aware what the White Sox expected of them. In the context of insurance and providing services for the White Sox, WeClean was obligated to go out and procure general liability coverage and name the White Sox entities as additional insurers. Turn the page to 2010 and 2011. The same contract, services contract, was entered into between the parties. And once again, obligated WeClean to go out and satisfy the insurance requirements imposed by the White Sox. Well, following that logic, it's my understanding they started contracting together in 2008, correct? That's correct, sir. And I think the last one was in 2012. That's right. Right. So 2008, 2009, we had the provision and issuing part of the agreement. And then in 2012, we did. So if we look at experience of governance, wouldn't it also beg to argue that, well, they must have intended to not include them in the two that are missing? I think that is one piece of evidence that likely state auto would argue in their favor on that issue. But at the bottom, we are here before the court on a denial of our motion for summary judgment and a grant of state auto's motion for summary judgment. That means there's no genuine issue of material fact. And we believe the course of dealing of the parties and the fact that WeClean went out and procured these certificates of insurance, they affirmatively did something to identify the fact that the White Sox entities qualify as an insured under the general liability policies, at the very least creates a genuine issue of material fact as to whether they understood the insurance requirements would obligate them to procure insurance for the benefit of the White Sox entities. So you're absolutely right, Your Honor. That's what state auto relies on as the basis for their position, that the absence of this insurance and indemnity agreement in 2010 and 2011 is fatal to the access claim that the White Sox were entitled to additional insured status. We don't think the inquiry ends there, though. To do so would then effectively read out of the 2011 services contract that term insurance services. Put another way, if we're going to simply disregard the insurance services language in the 2011 contract, that means that language is rendered superfluous, that there's no purpose in interpreting or applying some meaning to that language which flies in the face of contract interpretation principles. The court is required to apply some meaning to that language insurance requirements. The court is required to, say, assign some meaning and understand what the parties intend when the White Sox and WeClean agreed that WeClean would comply with those insurance requirements. To do so requires an examination of this extrinsic evidence. And isn't WeClean a bit of a disadvantager because the representative that was involved in the negotiations is no longer with us? That's correct, Your Honor. So then what other extrinsic evidence can we look at? Well, we certainly have the White Sox interpretation and their understanding of their insurance requirements. So on one side of that is clear that the White Sox made clear and understood that the insurance requirements obligated WeClean to procure additional insurance status. The WeClean side of things, admittedly, we don't have testimony from the WeClean representative that was responsible for insurance. At the same time, we do have the course of dealing in that they understood the insurance requirements in the past and that they procured certificates of insurance confirming and memorializing the obligations in 2008 and 2009. And that continued on in 2010 and 2011. So the evidence, the procuring of the certificates of insurance, although the certificates alone do not establish additional insurance for the White Sox, they serve to illustrate the fact that WeClean understood the terms of the contract, that it's obligations on the contract required to go out and get coverage for the White Sox entities. We believe that the Kennedy construction case from the Northern District applies here. There is some case law in the First District and other districts addressing similar additional insurance questions, but none of the cases are directly on point and, frankly, are confined in large part to the facts, the relationships of the parties and the specific contracts at issue. But the Kennedy construction case, although it's a non-binding decision to this Court, provides a relatively similar fact pattern. In that case, the general contractor was seeking additional insurance status from a subcontractor's insurance policy. The subcontractor's carrier denied coverage there, arguing that the contract at issue between the general contractor and the subcontractor didn't contain sufficient language to establish that the subcontractor agreed to name the general contractor as an additional insurer. And the Court analyzed the contract and found it to be ambiguous. It was unclear, based on the terms of that contract, whether or not the subcontractor had, in fact, agreed to procure coverage for the general contractor. And so the Court didn't stop its analysis there, as State Auto endorses here. The Court says it's an ambiguous contract and, therefore, I must take one step further and analyze the actual evidence underlying the intent of the parties to the contract to understand what they meant by including this language in the contract. They looked at two pieces of evidence principally. The first was a sample insurance term sheet, which the general contractor claimed was provided to the subcontractor. And the second were certificates of insurance. And the Court found that those two pieces of evidence established that it was the intent of the parties and the understanding of the parties that the subcontractor was required to obtain additional insurance status for the general contractor. And the same holds true here. The certificates of insurance and the prior course of dealing between the parties, the insurance and indemnification sheet that were provided in the years prior, show that We Clean understood its obligations. And resolving that ambiguity requires us to go one level further than what State Auto wants us to do here. It requires us to look at that evidence and have a trier of fact understand whether or not the parties understood and whether there was a meeting of the minds as to what the insurance requirements as contained in the 2011 insurance service. Isn't this case and the Kenny case somewhat factually distinguishable in the sense that in Kenny they had an actual list and they said these are the people that we want to add on as additional insurance and that's why the Court said, well, we have to look into the parole evidence then. That was the basis of their ambiguity. Based on the language of the policy, it was a poorly drafted provision, and the Court said based on this provision, I can't tell who they intended to add as an additional insurer. So that was the threshold question, is there an ambiguity, and the Court answered the question yes based on that language in that contract. It's the same as here, right? The language We Clean must comply with the White Sox insurance requirements is ambiguous, that nobody can answer the question on its face from that contract what those insurance requirements are. So we have to take it one step further as the Court did in Kenny construction, understand what those insurance requirements are. Again, to stop the analysis and say that, well, simply because the 2011 contract doesn't spell out those insurance requirements means that that's fatal to the White Sox claim for additional insurance status, that type of service level analysis results in a general rule that any time a court finds an ambiguity in an underlying contract, they're going to stop there, dig no further, and find in favor of the carrier that there would be no coverage. We believe that the proper contract interpretation principles require drilling down a bit further and understanding what the evidence shows as to the party's intent. We also believe that the two cases cited principally by State Auto are distinguishable. The Athens construction case, which it relies on as a – that it claims is on all fours here, the Court in that case specifically found that the contract was unambiguous. They looked at the language of the contract, interpreted it that it only required certificates of insurance, and therefore was unambiguous. That in and of itself means that that case is inapplicable. We argue that this case includes – the contract was ambiguous and required interpretation by the Court. In the United Stationers case, the Court specifically found that the contract only required specific types of insurance to be procured for the benefit of the additional insurer. It did not – that list did not include general liability coverage, and for that reason the claim for additional insurance status failed as well. So for those reasons, Your Honor, we believe that the trial court improperly granted summary judgment in favor of State Auto, and we ask that this Court reverse and remand the matter to the trial court. Any questions? Any questions? Any questions? Thank you. You have time for rebuttal. Thank you, Your Honor. Thank you. Again, good morning, Your Honors. May it please the Court. For the defendant at Belize State Auto, Robert Chalmers from Pretzel and Stauffer. I think we need to come to grips with what the issue is before the Court. This case is not a contract dispute between Chicago White Sox and WeClean Maintenance over WeClean's obligation to provide insurance for the White Sox. This is a dispute over whether the contract between WeClean and the White Sox strictly complies with the requirements of the additional insured endorsement on the State Auto policy issued to WeClean in order for the White Sox to be additional insured. There must be a written contract or written agreement between WeClean and the White Sox so stated. The additional insured endorsement in this case, and this Court is certainly familiar with it, provides to the effect that additional insured status is automatic for any person or organization for whom WeClean, the named insured, is performing operations when WeClean and that person or organization agree in a written contract or written agreement. And it's important to note this is written contract or written agreement because a panel of this Court looked at language similar to this where it was written contract or agreement. And the carrier there actually argued to the Court written modified contract but didn't modify agreement. The Court held in rejecting that argument there is no way that we will approve a contract which is written but also approve an agreement which is oral. It made no sense. So the underwriting there clearly reacted to that case. That's the U.S. fire case. But here we had, whether you want to call it a contract or agreement, it was a writing and, you know, what they're asking us to consider is the course of conduct that occurred before the missing two years came into existence and then after, before 2010 there was an agreement between the parties and then there was after 2011, 2012 there was. Yes, Your Honor. The White Sox, or I should say Axis, they're insured. Bear in mind this is a situation where if state auto had coverage for the White Sox, it would have provided a defense and indemnity. The claim would have been covered. It arose out of WeClean's operations. Instead, WeClean's own insurer, Axis, did what it was contractually obligated to do and defended and indemnified the White Sox. It's named insured. What they are asking for here is to pass the buck back to state auto where there is clear, clear additional insured endorsement which has a requirement of a written contract or written agreement, and yet they admit. Mr. Bassett admitted 10 minutes ago standing before Your Honors that there is no written contract or agreement setting forth the insurance requirements WeClean was obligated to provide to the White Sox. This idea of pass the buck seems a little harsh when we're talking about in prior years that's in fact what they contracted to do, right? Well, it's 2008, 2009. They didn't do it in 2010. They didn't do it in 2011. But they had the indemnification agreement, which Justice Reyes mentioned, at the outset in the 2012 season. Or rather, there's no contract evidencing that. I think, right, your point was that if it existed, it doesn't exist right now, but it could have existed, and here's the evidence that it could have existed. Actually, Justice Navarro, it didn't exist, and they admit it didn't exist, which is the distinguishing factor between the old republic versus county construction case that Mr. Bassett just mentioned, and Justice Reyes asked if it was distinguishable. And it unmistakably is distinguishable because in the old republic case, which of course is a Federal trial judge decision, which is not binding on this Court, it's not even persuasive. In fact, it's not even binding on the Federal Court. Be that as it may, what the Court did there was it worked, it allowed parallel evidence of a document which the parties admitted existed but was missing. Here, the proponent, Axis, admits it never existed. So in other words, parallel evidence would have to be used to fill in the blanks of a contract, which is the contract for services for the 2011 baseball season, which I dare say, based on precedent, this Court cannot and should not do. That's not what parallel evidence is for. And to say that it's ambiguous, therefore, you have to construe the terms. Let's bear in mind, if there's an ambiguity, it goes to weakling's obligation to provide insurance based on the contract for services for the 2011 baseball season. There is no contention that I recall from looking at the almost 5,200-page record here that the state auto policy is in any way ambiguous or unclear. It requires a written contract, a written agreement, requiring weakling to name any person or organization with whom it has a written contract, a written agreement, an additional insurer. There is no such document here. And they admit it. Page 3814 of the record, which is page 4 of their motion for summary judgment, page 14 of their brief of appellant, and counsel just spoke that 15 minutes ago and admitted it doesn't exist. Parallel evidence under that scenario to prove an ambiguity of a document that didn't exist is a stretch. It's a stretch that hasn't been approved by any court, especially when you look at the cases that we've cited involving additional insured endorsements and a written contract or agreement requirement. Every one, every one of them, they're all from this district, held that it's clear and unambiguous. There's one outlier, and that's West American Insurance v. J.R. Construction, which they cited, a case I argued and lost in 2001. And they held there that there was an ambiguity. Why? Because West American Insurance Company admitted in an e-mail that the purported additional insured wasn't insured. Then the issue there was whether it was a breach that required Section 155 damages. That's that case. That's an outlier. Yes, sir. I have a question. So under contract for services, there is a provision under insurance which reads, the lender will comply with all insurance requirements set forth by client and will provide certification of such insurance. Correct. And here, even in 2010 and 2011, we did have certificates of insurance. Correct. And the certificate of insurance, for whatever reason, it stated that the Chicago White Sox and various related White Sox entities are additional insured. However, for reliance on a certificate of insurance, which is probably one of the more unreliable documents in Illinois, you have to look at the language of the document. There is a disclaimer in boldface capital letters that basically says this is not issued as a matter of information only. Excuse me. Confirms no rights on anyone. That's the first disclaimer. Then there's a second disclaimer, also written in capital boldface letters, that the certificate is issued notwithstanding any requirement, term, or condition of any contract with respect to which the certificate may have been issued. Every case that has looked at a certificate of insurance which says ABC Company is an additional insured, says the policy controls. And you must look at the policy language. And we've cited the U.S. Fire case, the Atlanta American v. Argus, and there are other cases. And each one of them, where the certificate says something inconsistent with the policy, says the policy controls. The certificate may say the holder is an additional insured. But when you look at the policy and see there is a requirement of a written contract or agreement and there is none, then that certificate holder is not an additional insured. And the argument made here throughout this case by Access Insurance has been rejected each time it's been raised before a panel of this court. And the cases are well established in this area. So we have a situation where if we look to the requirements of the state auto policy, keep in mind the nature of that endorsement. That endorsement is issued by state auto contractually obligating it to provide insurance for unknown third parties. So it expects strict compliance with the requirements. State auto obligated itself to defend unknown third parties with which the named insured, or we claim, has a written contract or written agreement to add a party or person or organization as an insured. There's no preapproval requirement. There's no disclosure of who these third parties are. The underwriter has an idea of the nature of the business and agrees that if you, we claim, named insured, agree in a written contract or agreement to name X as an additional insured, then X is an additional insured if there is a written contract or agreement. That's not the situation here. And parallel evidence to put in evidence, if you will, what we claim in the White Sox intended to explain an ambiguity would be wrong. And there is no ambiguity. The ambiguity, bear in mind that the White Sox probably wrote this contract, the contract for services. And what they're looking for here is have this court construe the terms of a document that never existed to plunk those terms into the document which does exist, the contract for services for the 2011 baseball season. It's not what parallel evidence is for. The argument about ambiguity, ambiguity in the law, and this court well knows that, is where there's more than one reasonable interpretation, not simply where the parties may disagree. The White Sox don't even offer a reasonable interpretation of what they deem ambiguous, insurance requirements. If that's ambiguous, that's between the White Sox and we claim. That has nothing to do with state auto because there is no written agreement or written contract requiring we claim to name the Sox as an additional insured. The other cases that they cite, they cite the Quake decision. Quake is a parallel evidence case. They said it stands for the proposition it can define ambiguous terms. Well, here there is no ambiguity. In Quake, again, there were numerous documents and there were unsigned documents. And the court felt that the unsigned documents formed a part of the contract as a whole. So there was a document. It wasn't signed. Here, there never was a document and Axis admits there was never an insurance or identification and insurance requirements contract. All right, Counselor, may I want to wrap up, please? What I would suggest to the court is when it employs de novo review to a series of legal principles that are well established in the law, that the court will affirm the judgment of the trial court. Are there any questions of the panel? Any questions? No, thank you. Thank you, Counselor. Thank you. Thank you, Your Honors. Just two points I want to focus on. The first is the certificate of insurance. At no point in time have we maintained that the certificate alone modifies the policy or entitles the White Sox to additional insured coverage. The certificate is solely meant to illustrate and interpret the meaning of the insurance requirements provision in the contract between the White Sox and We Clean. So we agree with Counsel that it doesn't modify the policy. And that brings us back to the first point I wanted to make. Counsel mentioned at the beginning of his argument that this is not a dispute between the White Sox and We Clean as to the interpretation of their contract. But the flaw in that argument is that the state auto policy specifically requires an analysis of that contract. The state auto policy confers additional insured status on parties to which We Clean has entered into a contract, obligating it to procure insurance. Hence, there is a requirement that the court analyze a contract between We Clean and the third party, in this case the White Sox. So while Axis is not the White Sox and state auto is not We Clean, there is a requirement as triggered by the provisions of its policy for an analysis of the contract. That leads us to, in my mind, a two-step analysis. Step one, is the contract ambiguous or unambiguous? If it's unambiguous and the court on the face of the contract can interpret the term insurance requirements, it need not go no further and it can make a determination on additional insured coverage. We believe it's clear that that term is in fact ambiguous. And that requires then the second step, an analysis of the proper interpretation of that term. We've now gone back and forth for the past 25 minutes talking about various points in favor of We Clean and state auto on that issue, various points in favor of the White Sox and Axis on that issue. That, in our minds, means that there is a genuine issue of material fact that would require the trial court declining the motion for summary judgment filed by state auto. For that reason, we ask that the court reverse or amend the case to the trial court. Any questions from the court? Any further questions? No. Thank you. I want to thank counsels for a well-argued matter. We will take it under advisement and the court will take a short recess to switch panels.